Afternoon. My name is Nathaniel House. I'm a judge of the Appellate Court and presiding over this case with me are Justices Margaret McBride and David Ellis. This hearing is being conducted via Zoom. We'll proceed as follows today. Each side intern will be given an opportunity to present 10 minutes of uninterrupted presentation. At the conclusion of that time, the judges will have an opportunity to ask questions and the appellant will be given an opportunity to make a short rebuttal. Who's representing the appellant in this case? Please state your name. Good afternoon, Your Honor. John Fitzgerald for the plaintiff's appellants. Okay, and who's representing the appellees today? Good afternoon, Your Honor. Ken Ulrich on behalf of Cook County. Thank you. Do either one of you have questions about how we're going to proceed today? No, Your Honor. No, Your Honor. All right, very well then, Mr. Fitzgerald, you can proceed when you're ready and I'll let you know when you got two minutes left. Thank you, Your Honor, and may it please the court. Since I last appeared before this court, the county created a new transportation fund in a token effort to comply with the Safe Roads Amendment. The county deposited over 200 million dollars of transportation tax revenues into that transportation fund. However, despite the name of that fund, the county spends none of that money on transportation. Instead, the county spends those transportation funds on such things as human resources in the juvenile probation department, the cashier in the clerk's office, clinical support in the social services department, the public defender's community engagement program, laundry service in the county jail, and even a home confinement program, which is the opposite of transportation. So the county has not changed how it is actually spending transportation funds. It is spending them the same way it always has. The county is still violating the Safe Roads Amendment, which the people of Illinois approved at the ballot box in 2016 to protect transportation funds from being spent on purposes other than transportation. The county tries to justify its conduct by offering yet another strained and unreasonable interpretation of this constitutional limit on its power. The county's argument fails because of the purpose and the plain language of the Safe Roads Amendment. First, the entire purpose of the Safe Roads Amendment is to prevent the use of transportation funds on non-transportation purposes. That is clear from the plain language of the amendment, which bars the use of transportation funds on purposes that are not listed in subsections B and C. Those subsections are entirely focused on transportation. The word highway appears 17 times just in subsections B and C. Those subsections repeatedly speak of highways, roads, streets, bridges, mass transit, intercity passenger rail, ports, and airports. The amendment never once mentions jails, prosecutors, public defenders, or home confinement programs. Any reasonable voter reading this language would understand that the whole point of this amendment is protecting funding for highways, roads, streets, and other transportation infrastructure, not funding for jails. The county never explains how its interpretation of this amendment makes any sense at all in light of the amendment's entire point. Second, the county's interpretation is defeated by the amendment's plain language. Subsection B identifies seven ways in which transportation funds may be spent. One of them is the costs of administering laws related to vehicles and transportation. What does that mean? Subsection C tells us exactly what it means. It limits that term to direct program expenses related to two things that the county relies on to justify all of this spending. The enforcement of traffic, railroad, and motor carrier laws, and the safety of highways, roads, streets, bridges, mass transit, intercity passenger rail, ports, or airports. The county tries to stretch this language about enforcing traffic laws to cover every conceivable cost that the criminal justice system bears whenever someone is arrested, jailed, prosecuted, defended by the public defender's office, sentenced, incarcerated, and eventually rehabilitated. It tries to fit some portion of each and every function of the entire criminal justice system into this language about enforcement of traffic laws. But subsection C does not cover the whole criminal justice system. It covers direct program expenses related only to enforcement and only the enforcement of a very narrow category of laws. Traffic, railroad, and motor carrier laws. Enforcement does not mean the jail. That is incarceration, not enforcement. Enforcement also does not mean the state's attorney or the public defender or the probation department or social services. Nothing in the amendment covers those government functions. Lawyers, correctional officers, and social workers all do important work, but they don't enforce the rules of the road. If the drafters wanted to allow transportation funds to be spent on jails, prosecutors, or public defenders, they would have said so. The drafters of this amendment were very precise. They even found it necessary to specify in subsection C that transportation funds may be spent on the grade separation of highways and railroad crossings. So, if they wanted transportation funds to be spent on prosecuting, defending, or incarcerating people, they would have said that somewhere in these six paragraphs. Drafters normally don't hide elephants in mouse holes. They normally don't create sweeping exceptions or limitations just by implication. And subsection C says nothing about public safety. Those words appear nowhere in this amendment. And the concept of a chain of public safety is something that the amendment never says. That concept is totally contrary to what the amendment does say. The amendment speaks about the safety of specific types of physical transportation infrastructure. Highways, roads, streets, bridges, etc. So, this category covers things like traffic signs, bridge and road safety inspections, and lane markers, not jails or home confinement programs. And everything in subsection C is further limited by the phrase direct program expenses. The county knows full well what a program is. The county is required by law to organize its budget by program. Its appropriation bill organizes all spending by program. And its appropriation bill even has a glossary that defines the word program. And the parties agree that word is not ambiguous. A program is a program. It is not an activity or something else. And the county cannot show that it is spending transportation funds on direct program expenses related to anything in subsections B or C. So, it tries to change that standard from direct program expenses to something else. Activity based cost allocations. That is cheating. It is an attempt to replace the constitutional standard with some other standards. That is something the county cannot do. The constitution should be interpreted based on what it says, not what the county wishes it said. The county complains that it would be difficult to capture expenses at a program level. But the county again misses the entire point of this amendment. It was intended. Thank you, your honor. This amendment was intended to change business as usual and imposes new restrictions. And the county will need to change its spending practices to comply with these new restrictions. By design, subsection C imposes strict requirements on the use of transportation funds for the cost of administering laws related to vehicles and transportation. By contrast, the amendment makes it very easy to spend transportation funds on road construction. That use is not limited to direct program expenses. And that is no accident. It is what the drafters plainly intended and it is what the voters wanted. Very briefly, I want to cover the two remaining issues in this appeal. The circuit court decided that the Supreme Court's opinion should be limited to a perspective only application. That was wrong as a matter of law. The Supreme Court held that the amendments language is plain and that the county's attempt to avoid that language was not only wrong, it was unreasonable. That is the law of the case and it defeats any suggestion that the Supreme Court did anything that was not clearly foreshadowed. The county fails the other requirements of the Chevron test for the reasons stated in our brief. Finally, the circuit court erred as a matter of law by refusing to strike affidavits submitted by the county. Those affidavits expressed legal opinions. They were improperly used as extrinsic evidence of the amendments meaning, and they apply the wrong legal standard. In addition, the witness should not be allowed to speculate about hypothetical future events. And the course interpretation of the Constitution should not be influenced by the county's unfounded fear mongering. As our Supreme Court stated in Jorgensen versus Blagojevich, no principle of law permits us to suspend the constitutional requirements for economic reasons, no matter how compelling those reasons may seem. So, we ask this court to reverse the circuit court. Thank you. Thank you. Any questions? McBride, any questions? Sure, I'll ask the team. What is the definition of program in the county's glossary? That definition is the functional units of a county department or agency focused on particular objectives and further delineated with employee and cost data specific to that function. You said that, isn't there a statute that also directs the county to prepare their appropriations via programs? Yes, Your Honor, that's in the county code. It is 55 ILCS 5-6-24002. Is there a transportation program? I believe the county's budget, yes, it does have a number of transportation programs. Most of those are associated with the county's Department of Transportation and Highways, which receives no money at all from this transportation fund. That is one of the great ironies of this case, Your Honor. We have a transportation fund, but zero dollars from it go to the transportation department. All right, in your brief, you do, I think it's, I forget what page, but you say that there was a certain amount of monies that were allocated under the act. And there was like 1.7 million that went to the public defenders and 1 point something along those same lines for the state attorney's office. And one was for the, it involved the defense of, I believe, misdemeanor or DUI offenses. And then the state attorney's office was, whatever, you can tell me what it was. But you agree that those are funds that could be expended properly as direct program expenses or not? Not really, Your Honor. Of everything that is being subsidized with this transportation fund, that probably comes the closest. It's about a million dollars and it's in the state's attorney's office. And it's used by the state's attorney's office to prosecute DUI offenses. So even that, I don't think really meets the criteria because prosecutors aren't really enforcing traffic laws, but that comes closest. Well, you're saying prosecutors don't enforce traffic laws? No, Your Honor, I think they prosecute cases. I don't think it's correct to say that they enforce traffic laws. I think that's really the work done by law enforcement officers when they give people speeding tickets or arrest people for DUI. Prosecution, I think, is different. Okay, well, I'm not sure I agree with that, but. Don't they call them prosecutors? No, but what I want to ask you about is that of these things you list on pages 7 and 8 of all the different departments where the county expended funds under this Act, would you say those are not indirect? They're just simply not something that should be used under the Act? They're not something that should be used under the Act, Your Honor. Okay. Yes. All right, well, that's really, I just had a couple of questions, so I'm done at this point. Justice Ellis, I have a few. Yeah, go ahead. Good afternoon, Mr. I'm sorry, Justice McBride, I'm sorry, did you? No, please let Justice Ellis go forward. I'm not sure I'll have a question. I'd like to let him, I apologize. No, no, no problem. Good afternoon, Mr. Fitzgerald. Nice to see you again. You too, Justice Ellis. Okay. A few things I want to talk about. First of all, what would be your definition of the phrase direct program expense? I think you start with the word program. And so I think the word program, and by the way, there's this issue about whether you go with the definition in the county's appropriation bill or the dictionary definition. To be clear, I think either definition supports our position, so my arguments don't really depend on choosing one over the other. I think that the definition in the appropriation bill is more precise. It's more detailed. It's specific to this context. But even if we go with the definition in the dictionary, I think we still win. But the county's appropriation bill identifies all the programs, and the county's appropriation bill tells us what each program does. And we're taking the county's description of each program in the appropriation bill at face value. We're not questioning when the appropriation bill says that a program does X, we're not disputing that. And then you just hold that up against the categories in subsection B or C. And you just ask, does this program, according to the appropriation bill, does it fulfill one of these functions that is described in subsections B or C? And so the county's expenses of those programs, the expenses that are directly spent on those programs, those are the direct program expenses. The direct expenses of the program are the direct program expenses? Yes, Your Honor. Okay. But the operative word, when we talk about the phrase direct program expenses, direct program expenses must relate to transportation enforcement or transportation safety, right? Yes, Your Honor. The operative noun there is the expense, right? The expenses, not the program. The program modifies it, right? Yes, Your Honor. Okay. Yes, Your Honor. So is it not, I don't know how different this is from what you're ultimately saying anyways, but the focus is on each individual expense. Whether it's an allowable expense or not, the particular expense, whichever program it's in, must relate to transportation enforcement or safety. I think what I'm saying is slightly different, Your Honor. I would say that really the focus is on program. I think the word program does a lot of important work in that phrase. So I start by looking at the programs. And what do those programs do? Does it fall within one of these categories? And then the direct expenses of that program. So that's how I would view it. I think that's only marginally different from what Your Honor described. I mean, essentially, that's what the expert said, right? The expert, and I know you had an issue with the expert opinion, and I do want to ask you about these affidavits as well. But it really doesn't matter if it was the expert or the county. But the way the county implemented this ultimately was they looked at each program and looked for direct expenses within that program. And they called those direct program expenses. Isn't that what they did? No, Your Honor. What they did was something very different. And so, first of all, they're not really looking at programs at all. And their expert says that at paragraph 26 of his affidavit. He says that in his opinion, direct program expenses really just means direct expenses. So he's deleting the word program when it appears in direct program expenses. Then he's looking at activities that are associated with departments. And then he looks at both direct and indirect costs affiliated with those activities. And so the phrase that he uses to describe what he's looking at is activity-based cost allocations. Okay. Sorry to interrupt you, counsel. But at bottom, we can use the word activity if we want. I'm not sure why they chose that word. But they're ultimately trying to do – whether you agree with their outcome. See if you can agree with this much. They are trying to look in each department. And all of the things are grouped by programs. So necessarily, if you're looking inside the department, you're looking inside each program one at a time. And you're identifying the direct expenses within each program. And you're deciding what's a direct expense based on, you know, what thing is being paid for. What activity or function is being served. And, again, whether you agree with his conclusions, that's what I understand the county to be doing. Be going program by program and identifying expenses within each program that would be direct to the function of that program and that relate to either transportation enforcement or safety. That's my understanding of the methodology. And I think that you take great issue with which programs they're looking at and whether they sufficiently relate to. But do you agree with me that that's the methodology? I don't, Your Honor. I have a different view. So in my view, there are two independent problems with Mr. Slyer's analysis. The first is that the ultimate outcome that he reaches is that all of these various government functions fall within the scope of the amendment. And for the reasons we've covered, I don't believe they do. But the other is I don't think he's using the standard of direct program expenses. It is true that all the county spending is affiliated with some program. The word program is used in the Constitution. It has to have some meaning. And because otherwise, it would just be effectively all direct expenses because 100% of the expenses are affiliated with the program. The word program would be superfluous. So I do think that the word program has to do some independent work here. We're also superfluous. So looking at Mr. Slyer's affidavit, first of all, he disavows the word program. He thinks that's meaningless. And that's at paragraph 26 of his affidavit. He even describes that opinion as the key point of what he's doing. The other thing is that he's looking at indirect expenses, too, and that's at paragraph 4 of his affidavit where he says that cost allocation plans identify direct, indirect, or all costs. So he's looking beyond direct expenses, too. So what he's doing, and this is my rough understanding of what he's doing. I'll admit it becomes hard to follow at a certain point. But apparently what he's doing is he's going around to various departments, and he's gathering some information about what the departments do. And then he comes up with a percentage that he applies to that department's full budget. And so I don't think he's really looking at programs at all. I think he said he was going program by program, but then once he got his total costs related to transportation compared to total costs within the department, he ended up with a department-wide allocation, right? And he gave it a bit of a discount because total revenues are less than total expenditures, so he took 62%, right? Okay. Well, let's move on. I think I understand your position. Here's something that I'm not sure I do understand. There are some departments I think you would concede where there are at least some expenses that would be eligible. I think that's your position. Are you saying that every single expenditure made by the county, every single one, violates the Constitution? Are we talking about the programs that receive transportation funds? Yeah, I'm sorry. Yeah, sure. Yeah. So, I think the answer is that if you look at those programs, they probably, some of them, and the DUI office and the species clearance office might be a good example. They've got some activities that could relate in some way to enforcing traffic laws. So, I think that could be true, but, again, you've got to read that in conjunction with direct program expenses. Yeah, no, no. I hear you. Okay. Well, one of the things I'm struggling with is what we have in the record here is an appropriation bill. I don't even think we have the actual bill. I think we just have the budget book that explains it. But, in any event, the appropriation bill is, you know, as we all know, that's the legislative authority to the executive branch to spend. So, we know how the county has allocated money, but what I don't think I know is what the county has actually spent the money on. So, let me give you an example, okay? And I'm not trying to quiz you here, counsel. I'm going to give you an example that's easy for me, which is the police budget, okay? So, as I read the budget information in the record, okay, the police fund, the police department received $82 million in rough numbers. Nice round number, $82 million. A little bit more than that. They got $32 million from the transportation fund and $50 from another fund. I think it was public safety. But it doesn't matter. It was non-transportation, right? So, that's based on they did their allocations. They came up with a percentage. They gave that percentage a slight haircut. They came up with 39% of the police department budget is going to be appropriated out of transportation funds and 61% or $50 million from public safety. So, now they've got these two funds, right? And let's imagine that there is an expenditure by the police department for something that we could agree is related to transportation enforcement, at least in part. Let's do the in part example and see what you have to say about that. Let's say the police department spends $1 million on new cars. And some of those are patrol cars to patrol the county roads to catch speeders and DUIs. And some of the cars are undercover units. There's a line in the police budget for street crimes command, narcotics, gang units, guns, fugitive warrants. Let's say 40% of those cars are going to street crimes command. And let's say that has nothing to do with transportation enforcement. And let's say 60% of those cars directly relate to patrolling the roads for speeders. Now, I don't know if you're willing to concede to me that the purchase of patrol cars to patrol the roads for speeders would be related to transportation enforcement. You don't have to agree with me, but do you agree with me? I do. Okay. So, now we've got a bill for $1 million. Now, as I understand how the county does this, but I need help. Okay. I need help from both sides on this because it's not in the record. As I understand how a bill gets paid, it is not the case that the police department has some checking account of their own. But the way that the county will pay for something is through their controller. Just like at the state level, I don't get my checks from some judicial department. I get my checks from Susanna Mendoza, the state controller. I think what happens is the police department will give a voucher to the controller. Controller will check it for appropriations. They'll tap whatever fund they're allowed to tap, and they'll write that check for $1 million to some car dealership for these cars. Is that your understanding, or do you know how they pay a bill like that? I think that's my rough understanding, Your Honor. That does go beyond the record. It's an issue that wasn't really explored in this case, but roughly that is my understanding. Well, that's one of my issues here is, you know, in that scenario, okay, $1 million and $600,000 of that expense was a direct program expense related to transportation. $400,000 of that million was not. Would the controller in that case say, well, I've got two pots of money. I've got $32 million from the transportation fund, and I've got $50 million from the public safety fund. I should only tap $600,000 from transportation and $400,000 from public safety. Do we know if the controller, because the controller's got two different funds, he can write checks out of either one as far as I can tell from this record, right? So, is the controller or somebody in the county making a distinction to make sure that every time they tap the transportation fund, they are only paying for a transportation related expense? It's also a direct program expense. No, Your Honor. That's not happening at all. There was no evidence. How do you know that's not happening? Well, I should say there's no evidence in the record to show that's happening. And based on the appropriation bill, there is no program that is specific for cars that would be used to patrol the streets and give out speeding tickets. So, here's what I'm saying, just to back up a bit. So, I believe the way this works in the appropriation bill, there would have to be a program, and it can be in any department. But if we're talking about squad cars for sheriff's deputies who are patrolling the highways, patrolling the streets for the purpose of giving out speeding tickets, or giving out tickets to people who don't stop at red lights, that could be, that is related to enforcing traffic laws, but you would have to have some program in the county's budget that is the traffic patrol program or something like that. Why does the program have to relate to transportation? The expense has to relate to transportation, right? Isn't that basic English? I read it differently, Your Honor. I think the program has to relate to transportation. I think that's the way it works because otherwise the word program isn't really performing any function in that clause in subsection C. Well, but counsel, I'm not, let me push back on that a little bit. The word direct is there too, and the word direct has some meaning. And, you know, I will admit that I've looked high and low and near and far for any reference to the phrase direct program expenses anywhere in Illinois law, and I have struck out. And I'm assuming since neither of you have cited anything from Illinois that you've struck out to. If I'm wrong, please tell me. But generally speaking, when you talk about a direct expense of a program, the word direct does have meaning and it relates to the program. It's got to be an expense that is direct to the mission of the program. It can't be as contrasted with an indirect program expense. An indirect expense being things that go across more than one objective or function, like, you know, rent, electricity for the building, right? Human resources, maybe, that applies department-wide, not just to one program. And so it's not a question of reading the word program out. It's relevant. It's the direct expense of whatever program we're talking about. What is wrong with that definition? I mean, when you read the words of the Constitution, it does not say that the program has to relate to transportation. It says the expenses. What expenses? Direct program expenses. Tell me why that's wrong. I think it's wrong because every expense in the county's budget is affiliated with some program. So it would be grammatically the equivalent of saying that these are expenses that are paid on one of the seven days of the week. It would be surplus. It wouldn't add. Council, you were the one who successfully made the point to the Illinois Supreme Court that this constitutional amendment applies to every unit of local government in the state, home rule or otherwise. So do we know that every unit of government uses the phrase program? I mean, it may sound redundant in the context of Cook County, but does every county do this? Does every village do this? Does every city do it? I mean, there's a lot of units of government covered by this Constitution. And if they don't do it, and if they want to spend transportation funds on the cost of administering laws related to vehicles and transportation, then they need to start doing it. And fortunately, the parties agree that the word program is unambiguous, meaning there's only one reasonable understanding of what that word means. And so I will admit this amendment makes it tough for units of government at any level to spend transportation funds on the cost of administering laws related to vehicles and transportation. Of the seven ways in which these transportation funds can be spent, it's the only one that's specifically limited elsewhere in the amendment. So, if some unit of government is not already organizing its budget, or the parts of its budget that it wants to spend transportation funds on for administering laws related to vehicles and transportation, if it's not already doing that by program, it needs to start. As it goes to one of my points, one consequence of the people's choice to adopt this amendment is that a number of units of government are going to have to start doing things differently. And so, one complaint I have about the consultant, his opinions that were used by the circuit court is the consultant sort of operates on the assumption that the amendment means whatever the county was already doing. And that's the wrong way of looking at things. And so that's one argument that we've made. Yeah, yeah. But just to be clear, so I gave you my fun little hypothetical where I had a million dollars spent on police cars and 60% were for patrol. Patrolling the roads stop signs like you said speeding DUIs, your position would be that even that expense could not be paid for with transportation funds, unless the program in which that expense was incurred was exclusively related to transportation. Yes, and there's no reason why there can't be a program in the sheriff's department for traffic law enforcement. And then that program would be used, or the funds of that program would be used to pay for the squad cars that are used by the sheriff's deputies who are out there enforcing traffic laws. You would say that the units of local government, or I guess we'll just talk about Cook County Cook County if they want to do this is going to have to start creating a lot more programs that are very specific to the expenditure of transportation. Yes, I think that's consistent with what this amendment was intended to do. If the transportation funds are going to, they're going to be spent on this purpose administering laws related to vehicles and transportation. The government has to be very transparent about about how that money is being used for that purpose and part of that is having a specific program in its budget that is devoted to that purpose in this case, enforcing traffic laws. I'll ask you briefly about the affidavits. Do you think that the circuit court was under the impression that she somehow had to take into account the experts use of the phrase direct expenses direct program expenses. Do you think she felt, maybe not bound by it but that she cited that as a source in interpreting the Constitution. Yes, Your Honor, and I believe we cite in our brief the specific paragraphs of the circuit courts order. But when you read the circuit court summary judgment border the circuit repeatedly quoted Mr flyer including Mr flyers views on on what that language in the Constitution means. So, the answer is yes. Okay. I mean, it, it seems to me that it would be pretty hard for the county to explain to the court what they did without explaining how they were interpreting things. I can't imagine how the county could have written an affidavit that did not explain why they chose these expenses, based on their read of the Constitution. I mean, I, I don't put any stock into what an expert says about the Constitution, but I, I frankly doubt the circuit court did but but when I when I read that affidavit what I kept thinking to myself with your objection in mind was. They're not trying to tell us what it means they're telling us how, how they implemented this. And if we strike that how are we even going to know what the county does. We need to know what the county's thinking and why we can disagree with their interpretation, but if we don't even let them tell us what they were doing. How do we even resolve this case. And what I'm seeing your honor is that this expert cross the line, and paragraph 26 what he writes is a direct program expense is to use as used in the safe roads amendment and a direct expense are essentially the same. So, I'm not saying what do you expect him to do. I mean, he's got to tell us why he did what he did. Doesn't he. But that doesn't mean saying here's what the Constitution means, which is very explicitly what are you saying in paragraph 26 and also 37 he says incarceration falls within and looking for the language here. He says the function of punishment or confinement falls within the safe roads amendment, the issue of whether something falls within the safe roads amendment. That's a pure issue of law. We started a couple of cases where, where this has said whether something falls within that that's a pure issue of law. Well, I don't get no you'll you'll get no argument from any of us on that point. But again, I mean, if, if we strike every time that the expert tries to tell us what they're doing and why, then we can't get to the bottom of this. I mean, you guys have been trying to get an adjudication on this. And we need to know what the county is doing. We don't have to follow their interpretation. I've not read anything from the county suggesting that we need to follow what he did. They're just saying he's right. And they can argue that they can argue that their position, their read of the Constitution is right but the government has to implement this. And in doing it, they must try to interpret it and explaining what they did and how they interpreted. It seems to me, it would be silly to strike that we just don't need to take it as a legal, we can take it as this is why they did it. You don't agree. Well, I, I think that what Mr Slyer did here went beyond just explaining county did I think he was expressing legal opinions. Okay. Okay. I thank you for your patience Mr Fitzgerald and justice is I'm completed. I have a couple could I now inquire.  So, to your knowledge, does the county did the county appropriate any money to other villages or villages within the county to enforce traffic laws in those individual tasks. I'm not aware of that. Your honor. I don't know either way. All right. Well, okay. You don't know either way. I don't know if they did either, but that's entirely different. Wouldn't you agree from the fact that the sheriff's police do not have a traffic enforcement program. I know they have a program of enforcement throughout the forest preserves, but I'm not aware of any sheriff's program and maybe Mr can enlighten me that they have the authority anywhere in the county to issue traffic related violations. Are you aware one way or the other? Oh, actually, I'm not your honor. I am aware the county, the county's vehicle code at section 82 dash 190 says that it shall be the duty of the sheriff's department to enforce state traffic laws within the county. Okay, so they do have a program then related to that. It's not a program. It's legal authority to do it. Oh, okay. So they have legal authority. Your knowledge does the sheriff's department in any way enforce the state traffic loss. Yes, your honor. Okay. And as part of that, did any of the money ever get expended for that purpose in the appropriation. It didn't because it's not a program. Is that what you're saying? That's essentially what I'm saying. Your honor. So there is a program in the sheriff's department called the field operations command. And I think this may have been a program that justice Ellis was referring to earlier where it does a few different things. 1 of them is enforcing traffic laws, but they also do fugitive warrants. They also enforce drug laws. So there's some activities in that program that if they were set out as a separate budget program could relate to enforcing traffic laws. Is there anything that prohibits the court from striking a part of an affidavit that doesn't comply with spring court rule? 191. No, the, the court can strike part of an affidavit. Certainly. Okay. And in fact, with respect to Ms. Guzman's 1st affidavit, we, we only move to describe paragraph 6 of that affidavit. Right in all those different programs, or I'm sorry, the different expenses that were appropriated. Is it your position that say, for example, the social services clerical support services performs data entry tasks and reception duties, including answering screening and directing calls. Is this something you would say is an indirect cost? Is it a direct cost? Or is it just. It's, it's nothing, it's not, it's not related at all to enforcing traffic laws or road safety. Okay. And in any of these, would the circuit court be able to determine whether that particular task. Performs data entry tests and reception duties, including answering screening and directing calls. Is there anything in the record that would in any way. Tell us that some of that went to traffic related laws. Or the enforcement of traffic related loss. That's a, that's a good question. Your honor. I think the answer. Is that Mr Slyer would say that in his opinion. Some percentage of what that person does relates to enforcing traffic laws and I would disagree with that opinion for 2 reasons. 1st, I think that's not correct. I don't think that anyone. The, the data entry employee, or the, or the employee. Doing data entry, I don't think anything they do genuinely relates to enforcing traffic laws. I think that's stretching related to much to to broadly. But on top of that, it's not a program. That is that falls within any of these categories and subsections B or C. so I think that's what Mr slider would say. And those are the 2 reasons why I think that would be well. Well, and didn't he also apply that the county was complying with the Constitution? Didn't he say that on in so many words he did? And I think that's 1 of his legal opinions. And I think he's wrong for a couple of reasons. 1st, he's expressing legal opinions. 2nd, he's not applying the constitutional standard and 3rd, I think his affidavit is sort of used as extrinsic evidence of the amendments meeting. So, but that was 1 of his opinions and I, I think it was wrong and should have been struck for for all those reasons. Well, there must have been some reason and I'll ask Mr as well. There must have been some reason that that amendment uses the word. Direct program expenses. Yes, your honor. I agree wholeheartedly. There is the principle of interpretation that no word in the Constitution is meaningless or superfluous and I've shared with the court what I believe that means. What do you think it was written for cook county? I think it was written for all units of government in Illinois. Well, certainly, but it attempted to to create a change. Didn't that was what the amendment was about. All right. I don't have any questions further at this point. Thank you. Thank you. Anything else justice. Just a quick follow up. So, Mr Fitzgerald, you're right. There is a field operations command line item in the budget at least. It's described as performs patrol services for the purpose of criminal activity prevention. So that's, that's pretty broad. That may, I think we would probably agree would certainly include traffic. Enforcement duties, it may go beyond that. I'm not it may you may just be patrolling the county roads, you know, looking for bad guys. I don't know. But, but I, I bring this up because if that particular, we'll call it a program field operations command. You would say for any expense to be eligible for payment by transportation funds that entire program would have to be exclusively related to transportation. Yes, I do. And I think that's consistent with the overall intent of this amendment. Certainly direct program expenses related to. I'm sorry, costs of administrative laws related to vehicles and transportation that is treated very differently from the other 6 ways in which transportation funds can be spent. And the drafters required a degree of transparency that they didn't apply to the other 6 ways in which transportation funds can be spent. So, yes, we have to be some program. But where do we get the word exclusively. I don't see that anywhere in the Constitution. I mean, what if 80% of the field operations command dealt with street patrol road patrol and 20% was for other 80% of this were devoted to transportation enforcement. Why would if we take your assumption that the whole program must relate it just says it must relate if 80% of that program is devoted to transportation enforcement enforcement of traffic laws. That's not good enough for related. You would put the word exclusively in there. So, put that word in there. I think I'm not asking to add new words to to the Constitution at all. What I'm saying is the word program does does a lot of work here and the determination has to be on a program by program basis. That's what I'm saying, but you're not saying that you're saying it must exclusively. You said if 80% of the program was devoted to traffic enforcement. That's not good enough. It's not an eligible expense. It has to be 100% of the program. It does have to be. I'll admit that maybe on the margins. If we were talking about 95%, there could be some de minimis. Possibly, although drawing the line on that would be extremely difficult, but I think what I'm advocating for is really the only way to give effect to the word program here. Just you, you decided on a program by program basis. I think that necessarily means that you're not mixing these functions together within a single program. You're not calling. These functions within a program. Otherwise, it's just not possible to make this determination on a program by program basis. So that so that is what I'm saying. I will say this too. I'm going to do something very dangerous. We talked previous in 2021, we talked about the ballot summary a bit and I want to be very clear. I do not believe there's any ambiguity here and the parties agree that there is no ambiguity. No one is claiming that there's any ambiguity. But if the court disagrees with me and finds that there is an ambiguity, I will point out that the ballot summary uses the words directly dedicated to in this context. And we start that at our point. And so I think that's consistent with what I'm saying today. I have a question. I'm done. Thank you. Thank you. Mr. Cheryl. All right, Mr. you may proceed when you're ready. Good afternoon. May it please the court counsel. This court should affirm the decision below because the county 23 fiscal budget complies with the plain language of the safe roads amendment. The county may spend transportation revenues on the cost of administering laws related to vehicles and transportation. That is the very first enumerated authorized expense provided for under subsection B of the amendment. Subsection C of the amendment provides that such costs include direct program expenses related to, which has been interpreted broadly by the owner of Supreme court to enforcement of traffic laws and road safety. That is precisely what the county is doing. The county retained to undertake a rigorous analysis of the line item budgets from the, or all the various departments and independent agencies to isolate the direct cost related to enforcement of traffic laws and the safety of roads. That is what analysis is all about. The county then incorporated that analysis into its fiscal 23 budget and took an even more conservative approach yet still identified approximately 384 million dollars in direct program expenses. It's budgeted to incur in fiscal 23 related to the enforcement of traffic laws and the safety of roads. This exceeds the 237.5 million dollar estimated projected revenues from the ordinances at issue, creating a 146.6 million dollar cushion, if you will. And the affidavit of budget director Annette Guzman provides the undisputed facts regarding the county's incorporation of the analysis into its budget and to answer Justice McBride's question, that affidavit also specifies where the accounting mechanism, and I'll address that consistent with the question I think would be coming my way. The plaintiffs do not offer any counter allocation to dispute MGT's statistics or methodologies. Instead, consistent with the responses to Justice Ellis' question, they've tethered their case to the audacious position that no allocation of costs related to the enforcement of traffic laws and road safety is permissible. They start with the notion that the term program in the amendment that applies to all state and local government entities in the state of Illinois must mean program as defined in the specific glossary of Cook County's appropriation bill. But why would the drafters of the statewide amendment or the statewide voters who approved that amendment look to the glossary of one county's appropriation bill as a source of the definition of the word program? They wouldn't. Now, the plaintiffs admit that the term program in the amendment is unambiguous. Therefore, no extrinsic sources, including the county's budget, may be used to interpret its meaning. They also do not refute, and this is provided for in Mr. Slyer's affidavit, that municipalities use the word program differently in their various appropriation bills, and some municipalities do not define program at all in their appropriation bill. They simply argue that the word program is unambiguous. Therefore, it can have only one meaning. But words have different meanings in different contexts, and that does not mean they're ambiguous. Dictionaries are filled with multiple definitions for the same word depending on the particular context. The Merriam-Webster dictionary definition of program that applies in the context of direct program expenses is, quote, a plan or system under which action may be taken toward a goal. Of course, a program is also something you receive when you walk into a baseball game or a musical performance, but that clearly does not fit this context. Now, for the first time in the reply brief, the plaintiffs try a different argument by saying a program is not an activity. It's something under which action may be taken. So direct program expenses are not activity-based cost allocations. First, there is no distinction between the words action and activity. They are synonyms. But regardless, the county's budget, which incorporates MGT's analysis, is the plan under which the county is taking action to achieve the goal of enforcing traffic laws and keeping roads safe. The actions of the county are, for example, patrolling highways, arresting, detaining, prosecuting, defending those that are indigent, and trying those who are charged with violating traffic laws and endangering road safety. There is no dispute that the expenses that the county has identified as direct program expenses are all housed within the county's annual appropriation bill and, therefore, are within the county's budgetary programs. There's been a fair amount of questions and answers to that effect. The difference between the parties' position, however, is the plaintiff's insistence that the amendment's authorized expenses must be housed within budgetary programs that are exclusively devoted to the sole purpose of enforcing traffic laws and the safety of roads. But the amendment says nothing of the sort. And the circuit court honed in on this very issue, noting the absurdity of the plaintiff's position that whether the county was complying with the amendment depends on whether the budgetary program in which direct program expenses are found has an exclusive transportation-related purpose and name. The circuit court did not create a chain of public safety exception to the amendment as suggested in the plaintiff's brief, nor is the county advocating that. That is taking a single sentence out of paragraph 22 of the circuit court's opinion below out of context. The circuit court clearly stated that the county cannot meaningfully enforce traffic laws and maintain road safety without incarcerating defendants charged with traffic-related offenses. And there are necessary expenses that go along with that, many of which are, indeed, constitutionally mandated, such as providing food and health care. The plaintiffs used the term, a phrase, a chain of public safety to suggest the county is spending revenues on actions that are only indirectly related to generalized public safety activities. Not so. As should be clear by Mr. Slyer's affidavit and the county's brief, the county is spending money only on direct program expenses related to enforcement of traffic laws and road safety. Now, what are direct expenses? As Mr. Slyer attested and as Justice Ellis noted, direct expenses are those that are incurred within a particular department, not spread out among multiple departments. So he's not using indirect expenses. Further, in deciding what percentage of the county's budgetary programs are related to the enforcement of traffic laws and road safety, MGT's analysis is consistent with the circuit court's view that they are sufficiently direct in terms of a causal relationship to come within the meaning of the amendment. The amount of direct program expenses is directly tied to the extent of the enforcement of traffic laws and the safety of roads. Greater enforcement means greater costs. The plaintiff chose to move her summary judgment without developing the record or offering expert testimony to rebut Mr. Slyer. Instead, the plaintiff speculates that various county budgetary programs lack a direct connection to the enforcement of traffic laws or road safety, but they proffer no support for this. And even if a court... I'm sorry? Two minutes. ...exceeding the $146.6 million cushion that I mentioned before, before there could be any issue in terms of the county's compliance with the amendment. The plaintiff, just as an example, cite and question how a program for cleaning abandoned lots relates to enforcing traffic laws or road safety. The name of the program itself answers that question. It is Renew-A Community-Based Alternative to Incarceration. Even plaintiffs have previously acknowledged that alternatives to incarceration could be considered transportation-related expenses, including, for instance, a DUI social service program. Just as expenses associated with incarceration are appropriate to allocate, so too are expenses associated with alternatives to incarceration with respect to those who are charged with transportation-related offenses. Accordingly, we would respectfully request for the reasons stated and for the reasons stated in the county's brief that this court affirm the circuit court's rulings below in total. Thank you. Thank you. Do we have any questions? Justice McBride, Justice Ellis? I do, certainly. Justice McBride, is it okay if I go first? Please. Okay. Please. Mr. Ulrich, thank you very much. Good afternoon to you. Good afternoon. Thank you. This is how I understand the county's theory of how this all works. I'll just return to my easy example of the police department because it's a pretty easy one. You figure you've got an $82 million budget. Based on your allocations, you put $32 of that million to the transportation funds, you appropriate $32 million from transportation, and you appropriate $50 from public safety. Okay, so you've now done that allocation to try to roughly equate the amount of money you're going to have to spend on transportation expenses versus other expenses. Am I doing okay so far? I think you're doing just fine, Your Honor. Okay. Feel free to tell me if I'm not. But here's what I don't know. I don't know. If we assume that there are some expenses within the police department that relate to transportation enforcement, which I do assume that, okay? I don't know that for a fact, but it sure seems like some of this stuff relates to transportation enforcement, and it sure seems like some of it doesn't. How do we know which fund is being tapped to pay for which expense? Is your controller or somebody in the county taking a look at every bill and saying, hey, which thing is this for? Is this a transportation-related expense, or is this some other expense? Did this come from the gun unit for guns or for, I don't know, whatever? Flak jackets, which has nothing to do with transportation, and therefore, when I pay this bill, I'm going to have to tap the safety fund. Whereas with this other expense for patrol cars to patrol the roads, that's a transportation expense. That one I can take from the $32 million of the transportation fund. Somewhere in the county, is that determination being made on an expense-by-expense basis? Yes, Your Honor, and that is indeed within the record. I would draw the court's attention to the affidavit of the budget director, Ms. Guzman, which begins at Common Law Record 5636. First, at paragraph 26 of the affidavit, she says, each month, a journal entry will be processed by the controller's office to charge back, i.e., allocate or credit the public safety fund department and debit the transportation fund. The value of the monthly chargeback will be equal to 80% of the authorized expenses budgeted within the transportation fund, which is at the budgeted effective rate, divided by 12, 12 months in a year. And the reason that it's 80% is to be conservative in terms of making sure that there is not an overallocation. And then there is an accompanying memorandum, which exhibits one to her affidavit, and I would draw the court's attention specifically to Common Law Record 5648, where she describes the monitoring compliance process. Because as Your Honor is noting and suggesting, there are two steps. Step one is to determine what is an authorized expense based upon MGT's allocation plan. And then step two is to effectuate that, depending on, based upon your hypothetical, it falls within transportation or non-transportation. And that's based upon the metrics for each of the departments, in this case, in your hypothetical, the Sheriff's Department, that Mr. Slyer concludes is an appropriate allocation based upon the review of various documents and his over 100 discussions with county personnel. And what it says is that each month, a journal entry will be processed by the Comptroller's Office to charge back, again, allocate or credit the public safety departments identified above. And there's a chart above that shows what should be, what the effective budget rate is. And then there is this formula that is estimating on a monthly basis, hence the public safety authorized expenses, multiplied by effective budgeted rate, divided by 12 months, multiplied by 80%. And again, that's to ensure that there is not an overallocation. So that's the methodology by which the Comptroller's Office effectuates the process that you described. Your Honor, I hope that answers the question you have. Well, I'm trying to keep up with all of that. What I'm not sure I heard, but you tell me, is are they doing that on an expense by expense basis? So somebody looks at an expense and says this is in part related transportation or in total related transportation or not at all. And depending on that judgment, you take certain money from whichever fund? It doesn't sound like you just said that. Well, Your Honor, if I didn't say that, then let me be more specific. The chart that is, again, on page Common Law Record 5648, addresses the MGT rates and the effective budgeted rate for 12 different departments. And those are the 12 of the 17 different departments that MGT had allocated transportation related expenses to. That's part of what I refer to as the more conservative approach taken by the county. And so that lists for each one of the agencies the MGT allocated percentage, the total general fund budget before the transportation fund credit, the eligible budget for the transportation fund. And that would be multiplying column one by column two. In other words, you have, for example, the police department is 62.77% for the office of the chief judge, 27.8%. Those are the metrics that are derived. I'm sorry, I'm interrupting you. Oh, no, no, not at all. That's Common Law Record 5648. 48, okay. Your Honor, I'm happy to wait until you're able to toggle to that page. Okay, okay. But it sounds to me like you guys are trying to make sure there's money, the right amount of money to pay for these expenses. But is that enough? I mean, don't you have to, every time you draw money from the transportation fund, it has to be for a transportation related purpose, right? That's correct. And that's what you're telling me is being done here? That's being done. And then there is also a process for monthly expenditure reconciliation that's provided for on the next page. That's Common Law Record 5649. And an annual revenue and expenditure reconciliation, that's paragraph four of the memo on the same page. But, counsel, why should you need a reconciliation? If it's related to transportation, you can pay it out of this fund. If it's not, you pay it out of that fund. I mean, you can move money around all you want. The Constitution doesn't care how you move money around, as long as you, well, it does a little bit, I suppose, in the amendment. But as long as you're, you can move money around as long as you're doing it to pay for transportation. Right. And the funds become more and less needed, you can make those adjustments. But ultimately, it's a much simpler thing, then. This shouldn't require a reconciliation, should it? Well, no, Your Honor, that's a great question. But this is, after all, a budget. And there's a budget, and then there's what actually happens. And so, while there are expenses that are budgeted and anticipated that will be incurred by each of these 12 departments, the actual expenditures may be higher. Right. Or they may be lower. Right. A monthly basis and an annual basis, and that's why this sophisticated reconciliation process is in place, to ensure that, to use accounting terminology, the debits and the credits match up. And that's why the reconciliation process exists. Okay. Well, I mean, this amendment does not say anything about how you appropriate money. Right. They don't. Appropriation is just authority to spend. Right. It's what you actually spend it on. The actual expenditures. And if you're reconciling so that you make sure you have the right amount of each fund to pay for things, that's fine. I don't think the Constitution really cares about that either. What the Constitution cares about is when you incur an expense, if you're going to tap the transportation fund to pay it, it's got to be transportation-related. And I don't think I'm hearing you say that. Is that whether it's the Comptroller or somebody? Is somebody doing that? Yes, the Comptroller is doing that, and that's a reference to paragraph 26 of the affidavit that I was referring to. Okay. Your Honor, you may well be right that what the county is doing is more than is required. But I think the county's objective in doing so is for transparency's sake, to make it clear to the taxpayers, to the court, to Mr. Fitzgerald and his clients, who obviously have an interest in this, that the process that they're going through, the county is going through, is accurate from an accounting standpoint and is consistent with the budget. I'm sorry, it's consistent with the amendment. So I think that's why they're doing what they're doing. What I read in paragraph 26, each month a journal entry will be processed by the Comptroller's office to charge back or credit each of these 12 departments and debit the transportation fund. The value of the monthly chargeback will be equal to 80% of the authorized expenses budgeted within the transportation fund. Budgeted. But is that your way of saying that we are making sure that every expense that is paid for by transportation funds relates to transportation and not $1 doesn't? Exactly, not $1 doesn't. And that's why I think it's important to look at the chart that's just above that to see how to tie MGT's work product. Oh yeah, I get all that, but that's just how you appropriated money. That's just the authority you gave for spending. I want to know what you actually spent it on. And that is the way it is spent. Okay, okay. Let me just ask one more thing. You guys have all been patient with me. I'm done with that topic. There's a series of programs that the plaintiffs specifically cite, and I think Mr. Fitzgerald talked about them. They deal with things like data entry, human resources, administration. When we talk about what is a direct program expense, I think you would say, and I think Mr. Fitzgerald even agreed that another way of saying that is direct expense of a program. Your position is that those costs can be paid for because they are direct expenses within that program? I mean, aren't those the kind of things we normally think of, in other words, as indirect expenses? Administration for the whole police department, I know that that was zeroed out, but in any department. Administration is something that applies across every function. Isn't that typically thought of as an indirect expense? No, Your Honor, because in this context, indirect expenses means expenses that would go across departments. And I think an example that was used was something like rent or heat and the like. And in this case, what Mr. Schleyer has done and what the county is doing is taking the direct program expenses are the expenses related to compliance. As I indicated, direct program expenses are the county's budget is the plan under which the county is taking action to achieve the goal of enforcing traffic laws and keeping roads safe. So what Mr. Schleyer and MGT have done is they've gone through these various departments and they are studiously seeking to determine what portion of the expenses within that department are transportation related. In some cases, it's 27%. In other cases, it might be 32%. And that is applied to the department to determine how much of the direct expenses are associated with enforcing traffic laws. And by the way, Your Honor, I'm sorry. In certain cases where there are programs within the department that do not have are not related to transportation, MGT will first lock those off before they do the allocation. But what is critical in terms of answering your question is that the allocation is done across within a department based specifically on what is transportation related. What is enforcement of traffic laws and road safety. But it also has to be a direct expense of that program. And when you talk about things like clerical support service, data entry, human resources, those are things that you may have titled the program that and said, okay, well, now these are all direct. I mean, you can't create a program called indirect expenses and put them all in there and say, now they're direct because they relate to the title. I mean, aren't those the kind of things that the average person reading this, if anyone actually understood this amendment when reading it, wouldn't they see the word direct in contrast to the word indirect? Aren't these typically thought of in common parlance as indirect expenses that apply across an entire department and not unique to one function? Well, yes and no. I mean, the HR that is included, there's HR that is included and HR that is not included. HR that is included resides exclusively within a particular department. We're not talking about any kind of pro rata share of HR expenses at the county level. Clerical, the same thing. You do have to have clerical staff in order to run a department. And you do have to have clerical function in order to go about the process related to the enforcement of traffic laws and road safety. You have the people that are out in front. You have the sheriff's deputy that are out there with the radar gun timing people. They write tickets. You have the prosecutors that prosecute those offenses. You have the expenses in the jail, but you also have some back office function. You do have to have clerical people that are making sure that the department is running correctly. And the important thing is that MGT's analysis is simply allocating only that percent of those expenses that are tied to transportation purposes, that is, enforcement of traffic laws and road safety. Thank you. Okay, thank you. Thank you all. Any questions just to grind. Yes, just a couple. Did the judge go outside the Constitution when she inserted public safety into her analysis? No, no, no, no, your honor. She did not. And again, that is one that is one line out of context. She was not saying that the transportation revenues may be spent on a chain of public safety. There was no such exception. Well, what did she mean by the chain of public safety? She was referring to it specifically in relation to the enforcement of traffic laws and road safety. So she was not referring to it in any respect in terms of public safety generally. I think it's important. And I'd like to look at the language in particular of paragraph 22. Give me one second, your honor, if you don't mind, of that opinion. And this is specifically at Common Law Record 5824. Turning to the plain language of the amendment, this court does not read the amendment as narrowly as plaintiffs do. The amendment covers expenses related to the enforcement of traffic laws. Part of the enforcement of traffic laws must necessarily incur, include incarcerating certain inmates while traffic related charges are pending. And goes on to talk about shelter, medical care. And so then this is the line that you're referring to. But in context, it is apparent that the cost of laundering a traffic inmate's uniform is part of the chain of public safety. Then goes on, you can't maintain and meaningfully enforce traffic laws and maintain road safety as articulated by subsection C without being able to confine someone. Equating traffic safety with public safety. Only in only in a narrow sense. That is, there is. If you think about a Venn diagram and the big circle would be public safety, there is a smaller circle within that big circle. And that smaller circle, your honor, would be enforcement of traffic laws and road safety. It's not everything having to do with public safety. And so what she is doing, let me interrupt you. If you go through the examples of program expenses allocated to transportation fund that they plan is incorporated in their brief. Every single 1 of those categories. That I would think the average person might easily conclude that they're all they could be encompassed within the goal of obtaining and achieving public safety for all the community. Every single 1. I mean, I think it would be an easy. Easy conclusion that every single 1 of these relates and could relate to public safety as opposed to necessarily the smaller. I mean, isn't the traffic safety little narrower. You're right, your honor. It is part of the public safety, but your honor, I'll draw attention back to how is there an end to this? In other words, if everything here could be easily correlated to public safety, which I think it could, where is the end of this? Because your honor and the county is specifically allocated only those public safety related expenses that are directly tied to the enforcement of traffic laws and road safety. And your honor, I draw attention to Mr. Fitzgerald made reference to the ballot summary because that's what the voters were actually told. And what it specifically says is under the proposed amendment, transportation funds may be used by the state or local governments only for the following purposes. One, cost related to administering transportation and vehicle laws, including public safety purposes. And so that's clearly within the scope of the amendment. But again, we're not talking about all public safety expenses. What the court was talking about was public safety expenses that are specifically attributable to the costs of enforcing laws regarding traffic laws and road safety. So that's why I say it's the smaller circle within the larger circle. Okay. That's all I have. Well. All right, that's all I have. Thank you. Thank you. I have a question. Thank you. Thank you. Your honor. I would like to begin where counsel left off, which is the ballot summary. So, the ballot summary does use the term public safety. That term is not anywhere in 6 paragraphs of the actual amendment. It does use the term public safety, but then it goes on to explain what that means. And this is page 3 of the ballot summary. Under arguments in favor of the proposed amendment. It says approval of this amendment. Will ensure that transportation funds are used only for transportation purposes. This limitation provides a dedicated source of funding. For projects that will increase the quality of Illinois roads. Bridges bridge and road safety inspections. And mass transit, improving the quality of our roads and highways. Will help reduce accidents and damage to vehicles caused by road conditions or hazards. So, when the ballot summary talked about public safety. It wasn't talking about jails. The word jail is never used anywhere. And the ballot summary, or certainly not in the amendment. So, when the ballot summary talks about public safety, it meant. The public will be safer traveling on highways because the roads are going to be in better shape. That's what it's talking about. It's not public safety in this broad sense. That covers everything up to and including laundry in the county jail and social services and things like that. I will be very brief with my remaining points. I do think that 1 of the key issues that this court is called upon to decide here. Is the meaning of the term direct program expenses. The court knows how my clients interpret that phrase. I don't think that the court has heard from the county. A clear common sense explanation of what that term means. I heard counsel keep referring to direct costs. Or direct expenses, dropping the word program. And I, I think I heard 2 explanations of what a program means. I think at 1 point, counsel said that Mr. flyers affidavit. Or his report is a program. It's not it's not a government program. At another point, counsel suggested that the whole budget is a program. Well, we'll know that's not how anyone understands the word program that it's the entire budget. As a whole. I also want to briefly mention, and if I may share my screen briefly. The chart that counsel was referring to, I see screen sharing has been disabled. I can just talk about the chart. The chart that counsel described in paragraph 26 of this affidavit. When you pull up that chart, all it says is that Mr. Schleyer thinks that 62.77%. Of the whole budget of the police department falls within the amendment. Or 61.89% of the social services department falls within the event. That's light years away from what justice Ellis described where, when the sheriff's department gets an invoice from a vendor for flak jackets. Is someone deciding does this fall within enforcing traffic laws or is it something else? So, for all the reasons I've said today, I believe that. The only way to interpret this amendment consistent with what everyone agrees the purpose of it was consistent with its plain language and giving every word in this amendment. Some reasonable construction that's consistent with what voters would have understood. I think the inevitable conclusion. Is that the circuit course orders should be reversed. Thank you. Finally, I want to thank the court for time. I'm well aware that we have gone over the lunch hour. I want to thank the court for its time and its patience today. As do I, I do have a follow up justice house. You probably figured I would, I'll be brief. So, Mr. Fitzgerald back to that chart. So, I agree with your take on that start. Approximations of what they think. What do you, what do you make a paragraph? That's what Mr. already. I'm still not sure I understand what this means. Do you have that in front of you? I'm turning to it right now. We'll take your time. I know you've got a lot in front of you. But I agree, your honor, it's a very difficult paragraph to understand. Each month, a journal entry will be processed by the comptroller's office to charge back and charge back is in scare quotes. I allocate more credit and again, these are scare quotes in the language itself. The public safety fund departments, so that's every department that they think does something. To public safety and debit again, quotes around that word. The transportation fund, the value of the monthly charge back will be equal to 80% of the authorized expenses budgeted within the transportation fund. The budgeted effective rate divided by 12. Yeah, I think that just means that they're taking the money every month and putting the amount they think needs to be with maybe a little cushion into each. Allocating it to each each of the departments. But I don't read that as saying that the county, somebody in the county is making sure that they're only spending the transportation funds on. I do not. I agree. I don't read it that way either. How are we supposed to know if they're violating the amendment if we don't know how they're spending money. All you know is how they're planning to spend the money and they said we're going to do a consistent with this appropriation which of course they have to. But, you know, do you know how from okay police department right we're near the end of the fiscal year we're like two weeks away. Started with 32 million in transportation safety from the public safety fund. How much of the transportation funds has been spent by the police department. You know, I don't know your honor. Because we stopped receiving discovery of course, once the case ended in a certain court, but I think the answer your honor is we've taken. We've taken the appropriation bill and the county's repeated statements that it complies with that. Basically a face value. I can tell you this, if the county is doing something differently from what the appropriation bill says, I highly doubt it's being done differently in a way that makes their case stronger here. Maybe. Okay. All right. And that's all I have. Thank you. Thank you both for your time counsel. Okay. All right. Very well. This case was well argued well briefed, we will take the matter under advisement and issue a decision in due course. Thank you both and have a great afternoon. Thank you very much. Thank you. Thank you.